IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| DORIS CALDWELL | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-04-576 |
| | § | |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Doris Caldwell's action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), requesting judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for supplementary security income ("SSI") under Title XVI of the Social Security Act. Both parties have filed motions for summary judgment. After considering the parties' motions and the record in this case, the Court submits its Report and Recommendation to the District Court.

### Background

Plaintiff filed her application for SSI benefits in December, 1995, alleging an inability to work since August 15, 1994, because of blindness in one eye, diabetes, high blood pressure, psoriasis, pain and other symptoms. After her claim was denied, a hearing was held on May 1, 1998. On July 30, 1998, the Administrative Law Judge ("ALJ") issued an unfavorable opinion. Petitioner subsequently filed another application that was denied, and the two applications were then consolidated. On July 15, 2000, the Appeals Council remanded the consolidated case to the

1

ALJ for further consideration of two issues.  First, Plaintiff submitted new evidence to the Appeals Council from Dr. Naomi Lockett stating that she had significant functional limitations due to psoriasis, arthritis, and back problems.  Second, the ALJ failed to consider in her first opinion testimony by the medical expert, Dr. Henry Hamilton, that it was questionable whether Plaintiff could lift 10 pounds and stand for even two hours a day.  After a second hearing was held, the ALJ issued a partially favorable opinion on July 27, 2001, that found Petitioner had been disabled since April 16, 2001.  However, the ALJ held that Plaintiff had been able to perform her past relevant work prior to that date.  The ALJ determined:

1. The claimant protectively filed applications for Supplemental Security Income on December 5, 1995, and February 11, 2000.

2. The claimant has not engaged in substantial gainful activity since her filing date.

3. The claimant has psoriasis, diabetes mellitus, degenerative disc disease, osteoarthritis, hypertension, obesity, and diminished vision which more than slightly limit her ability to perform work related activities.

4. None of the claimant's impairments, either individually or in combination, is attended by clinical or laboratory findings which are the same as, or equivalent to, the medical criteria specified for any impairment listed in Appendix 1, Subpart P, of Regulations No. 4.

5. The claimant's testimony regarding her subjective symptoms and functional limitations is neither fully credible nor supported by the record as a whole for the period of time prior to April 16, 2001.

6. For the period of time prior to April 16, 2001, the claimant had the residual functional capacity for light work.  Due to her arthritis, the claimant needed the option of sitting or standing at 2-hour intervals.  Due to her history of asthma, the claimant needed to work in a climate controlled environment, which was reasonably free of noxious fumes, dust, smoke, and lint.  The claimant had a visual acuity of 20/30 in her right eye and 20/40 in her left eye.  As of April 16, 2001, the claimant's ability to perform even sedentary work is significantly diminished by her subjective physical symptomatology, an inability to lift 5 pounds, and an inability to perform work related activities on a sustained basis.

    7.    Prior to April 16, 2001, the claimant was able to perform all of her past relevant work.  As of April 16, 2001, the claimant has been unable to perform her past relevant work.

    8.    The claimant was 53 years old at her alleged onset date, defined as an individual closely approaching advanced age, and turned age 55 on July 13, 1997, defined as an individual of advanced age.  She has a high school education.

    9.    For the period of time since April 16, 2001, under the framework of the Rules, the claimant's medical vocational profile has closely approximated Rule 201.06 of the Appendix 2, Subpart P, Social Security Regulations No. 4, which warrants a finding that she is disabled.

    10.    The claimant has been under a disability, as defined in the Act, since April 16, 2001.

Hearing Transcript ("HT") at 34-35.  After the Appeals Council denied review, Petitioner filed the instant suit.

## Discussion

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 172, 173 (5th Cir. 1999).  A court may not reweigh the evidence or try the issues *de novo*.  *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner, not the Court, to resolve.  *Brown*, 192 F.3d at 496.

Substantial evidence is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  If the Commissioner's findings are adjudged to be supported by substantial evidence, then such findings are conclusive and must be affirmed.  *Id*.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings exist to support the decision. *Johnson*, 864 F.2d at 343-344.

### The Psoriasis Issue

Plaintiff first alleges that the ALJ erred in not finding that her psoriasis met or equaled Listing 8.05, which is required to find that she was disabled. 20 C.F.R. § 416.926(a). It is undisputed that Plaintiff suffered from significant psoriatic problems following a severe reaction to penicillin in June, 1993. Listing 8.05 for psoriasis requires a showing of: (1) extensive lesions, including involvement of feet or hands, (2) that impose a marked limitation of function, and (3) that are not responding to prescribed treatment. 20 C.F.R. Part 404, Subpart P, App. 1 § 8.05. As noted above, the medical expert in the first hearing questioned Plaintiff's ability to stand two hours a day or lift more than 10 pounds. In the second hearing, the ALJ elicited expert testimony from Dr. Steven Goldstein, who is board certified in internal medicine and neurology.

Dr. Goldstein reviewed Plaintiff's medical records and was examined by the ALJ at the hearing. Based on his review, the medical expert concluded that Petitioner's psoriasis would cause discomfort and itching but that it did not cause any significant physical limitations. Tr. at 28, 451-76. He stated that Petitioner could perform light work prior to April 16, 2001, limited by the ability to sit or stand for two hour intervals, despite extensive lesions on the lower and upper extremities. Tr. at 465. The Court's review of the transcript shows that Dr. Goldstein gave proper consideration to a variety of pre-April 16, 2001, examinations of Plaintiff, and these records support his conclusion. For example, an examination in August, 1996, by Dr. Donald Gibson, indicated that Plaintiff's motor and sensory functions were intact, that all her joints had full range of motion, and that her gait, coordination, and grip strength were normal. Tr. at 183. Dr. Gibson concluded that while Plaintiff had extensive psoriatic plaque, the lesions did not cause "significant physical limitations." Tr. at 184. Rheumatolgist Dr. Niti Goel concluded on July 15, 1996, that Plaintiff had

no signs of psoriatic arthritis. Tr. at 210. The ALJ also asked Dr. Goldstein to discuss Dr. Hamilton's earlier testimony that Plaintiff might not be able to lift 10 pounds or stand for two hours at a time. Dr. Goldstein stated that, in his opinion, the record did not support this conclusion.

Plaintiff relies on medical evidence in the record concerning her psoriasis and the remarks of Dr. Hamilton at the earlier hearing. This Court, of course, does not reweigh evidence or review issues *de novo*. *Johnson*, 864 F.2d at 343-44. The real issue at stake is the conflict between Dr. Hamilton's comments and Dr. Goldstein's evaluation at the second hearing. As the finder of fact, the ALJ has the duty to resolve conflicts in the evidence and to weigh the opinions of medical consultants. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Plaintiff has shown no reason for concluding that the ALJ's decision to credit Dr. Goldstein's conclusions is not supported by substantial evidence.

The Court therefore **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED** on this issue.

The Non-Exertional Limitations Issue

Plaintiff next alleges that the ALJ failed to give adequate consideration to her non-exertional limitations from pain and itching. Non-exertional limitations are defined as non-strength limits on performing activities. These include diminished capacity for concentration, seeing, restrictions on environmental exposure to dust and fumes, and manipulation factors such as reaching, handling, stooping, and climbing. 20 C.F.R. § 404.1569a(a)(c). Pain can be a non-exertional limit. *Kieser v. Barnhart*, 222 F. Supp.2d 1298, 1302 (M. D. Fla. 2002).

Plaintiff's argument is unclear, but she appears to allege that pain stemming both from her arthritis and psoriasis was improperly considered by the ALJ. This claim is without merit. There is no evidence she experienced pain due to psoriasis itself. Dr. Hamilton testified that pain was

5

rarely a side effect of psoriasis in the absence of pustules. The medical expert testified that complaints of pain related to psoriasis were not consistent with Plaintiff's medical record. Tr. at 471. A list of Plaintiff's medications does not include any prescription pain medication. As mentioned above, Dr. Goel determined that Plaintiff did not have psoriatic arthritis.

Plaintiff has presented insufficient evidence to reject the ALJ's evaluation of her other non-exertional limits. The medical expert testified that psoriasis would not be affected by environmental factors such as dust or fumes, though Plaintiff could be more affected than others by chemicals. The environmental restrictions placed on Plaintiff's work site for asthma compensated for this restriction. Tr. at 35. Dr. Goldstein testified that the record did not support a conclusion that psoriasis caused marked limitations for Plaintiff. Tr. at 451ff. During the hearing, the ALJ asked the medical expert if Plaintiff's itching would impose non-exertional limits on her ability to work. Dr. Goldstein responded that it might affect Plaintiff's ability to concentrate and function. Tr. at 471.

Plaintiff supports her argument with testimony that her medication makes her sleepy. Plaintiff stated at the hearing that she was required to take amitriptylene, an antidepressant sometimes given for sleep, to ease her pain so that she could sleep. Tr. at 488. However, the record shows that Dr. Goel prescribed that medication because he thought her inability to sleep caused pain, not that pain caused insomnia. Tr. at 210. The medical expert testified that only the amitriptylene could cause drowsiness. Tr. at 488. Although at the time of the hearing, this medication appears to have been prescribed for morning and evening use, during the time at issue the record states that it was prescribed only for bedtime use. Tr. at 210, 395. It is therefore entirely unclear whether the type of drowsiness Petitioner complained of due to amitriptylene taken in the morning would have existed prior to April 16, 2001.

Plaintiff also complains that the ALJ improperly assessed her subjective complaints of pain.

6

The ALJ concluded that Plaintiff's testimony at the hearing was not fully credible. Tr. at 33. An ALJ's credibility findings are entitled to great deference as long as they are supported by substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). As noted above, Plaintiff was not taking prescription pain medication for her alleged discomfort. Dr. Goldstein stated that the record did not indicate that Plaintiff suffered from serious functional limitations prior to April 16, 2001, and the ALJ pointed out that Plaintiff's physicians had noted itching but did not state that it presented limitations to her ability to sit, stand, walk, or manipulate objects prior to the disability date of April 16. Based on this record, insufficient evidence exists to conclude that deference should not be given to the ALJ's credibility assessment.

The Court therefore **RECOMMENDS** that Plaintiff's motion be **DENIED** and that Defendant's motion be **GRANTED** on this issue.

<u>The Treating Physician Issue</u>

Plaintiff next alleges that the ALJ erred by failing to give controlling weight to opinions of her treating physicians, Dr. Humira Zhou and Dr. Naomi Lockett. The ALJ rejected a July 11, 1996, statement by Dr. Zhou that Plaintiff was "permanently disabled for any employment." Such decisions are reserved for the Commissioner, and the ALJ was not obligated to give controlling weight to such an opinion. *Frank v. Apfel*, 326 F.3d 618, 620 (5th Cir. 2003) ("[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work' . . . .").

The ALJ discussed at considerable length opinions by Dr. Lockett, as she had been instructed to do by the Appeals Council. Lockett concluded that Plaintiff suffered from arthritis that would prevent her from lifting any weight occasionally and had severe degenerative joint disease that kept her from standing and walking. Tr. at 308. She further stated that Plaintiff's psoriasis limited her

7

ability to sit to two hours.  Id.

Ordinarily, the opinions of treating physicians are given considerable weight in determining disability, though less weight can be given if good cause is shown.  *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).  This is especially true when the treatment period has been over a considerable period of time.  *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). Good cause includes conclusory statements from the treating physician, opinions otherwise unsupported by the evidence, or conclusions unsupported by medically accepted clinical techniques.  *Newton*, 209 F.3d at 456.  Conflicts between the conclusions of different physicians are reserved for the Commissioner.  *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).  However, the ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d 378, 393  (5th Cir. 2000).

The Social Security Regulations provide a framework for the consideration of expert medical opinions of a claimant's treating physician.  Under 20 C.F.R. § 416.927(d)(2), consideration of a treating physician's opinion *must* be based on: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the record, (5) the consistency of the opinion with the record, and (6) the treating physician's specialty.

The Court's review of the ALJ's decision shows that she considered most of these factors. The ALJ noted, for example, that Plaintiff had seen Dr. Lockett twice a month for two years, yet she concluded that this "was not particularly long." Tr. at 32.  Given that the ALJ did not question the fact that Plaintiff had consulted Lockett approximately 48 times, it is unreasonable on its face to dismiss the treating relationship as essentially brief and of slight consequence.  Nevertheless, substantial evidence supports the ALJ's final conclusion concerning Dr. Lockett.  She noted, for

8

example, that Dr. Gibson's physical examination of Plaintiff showed forward flexion of a full 80 degrees and normal motor functioning. Medical expert Dr. Goldstein testified that the medical record simply did not support the treating physician's conclusions, which he noted were exaggerated in some respects. For example, Lockett concluded that Plaintiff could not be exposed to heights or moving machinery, but there was not evidence of any medical condition that would warrant such a conclusion. Tr. at 32. In addition, both Dr. Gibson and Dr. Goldstein have medical specializations, and Plaintiff offers no evidence that her treating physician also does.

The Court therefore **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED** on this point.

<u>The RFC Issue</u>

Finally, Plaintiff argues that the ALJ erred in concluding that she could perform light work prior to April 16, 2001. A residual functioning capacity determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). The ALJ relied, in large part, on testimony by Dr. Goldstein that Plaintiff was able to perform duties categorized as "light" by the applicable regulations. She was clearly entitled to do so. The ALJ also relied on Dr. Gibson's initial August 23, 1996, report that also concluded she was able to function in a manner that would allow an RFC assessment of light work. Although Plaintiff objects to this conclusion, it was Gibson's later opinion of April 16, 2001, that led the ALJ to conclude that Plaintiff was disabled as of that date. Plaintiff essentially argues that the ALJ properly relied on the second opinion but not on the first. She shows no reason why one of Dr. Gibson's conclusions is reliable and the other not, and the ALJ's decision is supported by sufficient evidence in the record.

The Court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED** on this issue.

### Conclusion

The Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Instrument No. 23) be **DENIED**; that Defendant's Motion for Summary Judgment (Instrument No. 25) be **GRANTED**; and that this action be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **March 17, 2006**, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections SHALL be mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____1st_____ day of March, 2006.

_____
John R. Froeschner
United States Magistrate Judge

10